IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:22-cv-02287-CNS-STV

KALEY CHILES,

        Plaintiff,

v.

PATTY SALAZAR, *et al.,*

        Defendants

---

## ONE COLORADO'S MOTION FOR PERMISSION TO INTERVENE AS A DEFENDANT PURSUANT TO RULE 24(b)

---

Pursuant to Federal Rule of Civil Procedure 24(b), One Colorado, Ltd. ("One Colorado"), acting by and through its undersigned counsel, respectfully moves this court to permit it to intervene as a party defendant into the above-captioned case (the "Motion").  In support of its Motion, One Colorado states as follows:

**Certificate of Conferral:**  Pursuant to D.C.Colo.LCivR 7.1(A), undersigned counsel has conferred with counsel for Plaintiff Giles concerning this Motion, and Plaintiff opposes intervention.  Undersigned counsel has also conferred with counsel for the Defendants, and Defendants consent to One Colorado's intervention in this case.

## INTRODUCTION

One Colorado, the largest civil rights organization in the State of Colorado advocating for the state's lesbian, gay, bisexual, transgender and queer ("LGBTQ") residents, respectfully moves this Court for an order permitting it to intervene as a party defendant pursuant to

Rule 24(b) of the Federal Rules of Civil Procedure.  One Colorado was the lead organizational

supporter of the challenged law and provided extensive support to advance legislative efforts to

protect minors in our state from conversion therapy, including House Bill 19-1129 ("HB 19-

1129") and similar bills introduced in previous legislative sessions.  HB 19-1129 prohibits

persons who are licensed to provide professional mental health treatment from engaging in

dangerous practices seeking to change a minor's sexual orientation or gender identity.  The

consensus of medical and mental health professional organizations is that such practices are

unsafe for minors and should not be performed on minor patients under any circumstances.  *See*

Declaration of Nadine Bridges in Support of One Colorado's Motion for Permission to Intervene

as a Defendant Pursuant to Rule 24(b) at ¶ 6 (hereinafter "Bridges Decl.").  One Colorado has

more than 105,000 members, including LGBTQ children and youth who are at risk of being

subjected to these harmful practices and parents who wish to ensure that their LGBTQ children

cannot be subjected to these practices by licensed mental health professionals.  *Id.* at ¶ 4.  These

members are currently protected by HB 19-1129 and have a strong interest in ensuring that it is

upheld.  One Colorado's membership also includes adults who were subjected to these practices

as minors and who understand through experience the harms that result from efforts by licensed

professionals to change a minor's sexual orientation or gender identity.  *Id.*

One Colorado's addition to this action as a party defendant will not expand the issues

before the Court or cause any delay.  To the contrary, One Colorado's unique position as the

leading organizational supporter of the challenged law and its deep understanding of how this

law concretely protects families and youth in this state will aid the Court in efficiently

adjudicating the parties' rights.  Intervention is appropriate because One Colorado "will provide

2

a helpful, alternative viewpoint from the vantage of some persons who have undergone [sexual

orientation change efforts] or are potential patients of treatment that will aid the court in

resolving plaintiffs' claims fully and fairly." *Pickup v. Brown*, No. 2:12-CV-02497-KJM-EFB,

2012 WL 6024387, *4 (E.D. Cal. Dec. 4, 2012) (granting intervention motion of statewide

LGBTQ organization in lawsuit challenging statute prohibiting licensed professionals from

subjecting minors to conversion therapy); Order on Motion of Equal Rights Washington for

Permission to Intervene as Party Defendant Pursuant to Rule 24(b) at 3, *Tingley v. Ferguson*, No.

21-5359-RJB (Jun. 28, 2021), ECF No. 33 (same); *King v. Christie*, 981 F. Supp. 2d 296, 310

(D. N.J. 2013) (same).  One Colorado will make valuable contributions to this action, as it has

extensive knowledge of the measure's legislative history and background, and its members'

experience with the harmful effects of sexual orientation conversion efforts will allow it to

provide a firsthand perspective which the existing Defendants lack.

### FACTUAL BACKGROUND

**A.**    **House Bill 19-1129 Protects LGBTQ Minors From Practices That All Major Medical And Mental Health Associations Have Found To Be Dangerous for Minors.**

HB 19-1129 amended the sections of Colorado's Professions and Occupations Code that

regulate medical and mental health providers, which the Legislature established "to safeguard the

public health, safety, and welfare of the people of this state and in order to protect the people of

this state against the unauthorized, unqualified, and improper" practice of those professions.

Colo. Rev. Stat. Ann. § 12-245-101 (West); *see also id.* § 12-240-101, et seq.  Specifically, HB

19-1129 added "[e]ngaging in conversion therapy with a patient who is under eighteen years of

age" to the list of acts constituting unprofessional conduct for any license holder subject to

3

Articles 240 or 245 of the Professions and Occupations Code. *Id.* §§ 12-240-121(1)(ee), 12-245-224(1)(t)(V).

The statute defines "conversion therapy" as "any practice or treatment by a licensee, registrant, or certificate holder that attempts or purports to change an individual's sexual orientation or gender identity, including efforts to change behaviors or gender expressions or to eliminate or reduce sexual or romantic attraction or feelings toward individuals of the same sex." *Id.* § 12-245-202(3.5)(a); *id.* § 12-240-104(5.5)(a) (applying that same definition to "a licensed physician specializing in the practice of psychiatry"). To ensure that the law narrowly targets only practices that are ineffective and harmful, the definition of "conversion therapy" under the statute expressly does not include "practices or treatments that provide . . . [a]cceptance, support, and understanding for the facilitation of an individual's coping, social support, and identity exploration and development, including sexual-orientation-neutral interventions to prevent or address unlawful or unsafe sexual practices, as long as the counseling does not seek to change sexual orientation or gender identity." *Id.* §§ 12-245-202(3.5)(b), 12-240-104(5.5)(b).

In enacting HB 19-1129, the Colorado Legislature was fulfilling its obligation to protect minors in Colorado from being subjected to unnecessary, discredited, and harmful treatments by state-licensed mental health providers. The nation's leading medical and mental health organizations have recognized that efforts by therapists to change a minor's sexual orientation or gender identity put minors at risk of serious harms, including a dramatically increased risk of suicidality, and thus should never be performed on minors under any circumstances. In 2009, the American Psychological Association (the "APA") surveyed then-existing scientific literature. *See* Am. Psychological Ass'n, *Report of the American Psychological Association Task Force on*

4

*Appropriate Therapeutic Responses to Sexual Orientation* (Aug. 5, 2009) (hereinafter, the "APA

Report"), *available at* https://www.apa.org/pi/lgbt/resources/therapeutic-response.pdf.  The APA

Report "found no empirical evidence that providing any type of therapy in childhood can alter

adult same-sex sexual orientation" and that such therapy "is not likely to produce its intended

outcomes and can produce harm for some of its participants."  *Id.* at 79, 83.  The APA Report

concluded that licensed mental health providers should not engage in sexual orientation change

efforts with minors, regardless of whether techniques rely on talk therapy or other methods.  *Id.*

at 79–80.

Since 1997, the APA has issued a series of resolutions and policy statements

discouraging therapeutic efforts to change sexual orientation and gender identity.  Most recently,

it issued resolutions opposing such efforts and affirming that "scientific evidence and clinical

experience indicate that [sexual orientation and gender identity change efforts] put individuals at

significant risk of harm."  *See* Am. Psychological Ass'n*, APA Resolution on Sexual Orientation

Change Efforts* at 8 (Feb. 2021), *available at* https://www.apa.org/about/policy/resolution-

sexual-orientation-change-efforts.pdf; Am. Psychological Ass'n*, APA Resolution on Gender

Identity Change Efforts* at 3 (Feb. 2021), *available at*

https://www.apa.org/about/policy/resolution-gender-identity-change-efforts.pdf.

In 2015, an agency of the U.S. Department of Health and Human Services surveyed

existing research on conversion therapy and published a report and recommendations based on

"consensus statements developed by experts in the field after a careful review of existing

research, professional health association reports and summaries, and expert clinical guidance."

Substance Abuse and Mental Health Servs. Admin., *Ending Conversion Therapy: Supporting*

*and Affirming LGBTQ Youth* at 1 (Oct. 2015), *available at*

https://store.samhsa.gov/sites/default/files/d7/priv/sma15-4928.pdf.  The report found "none of

the existing research supports the premise that mental or behavioral health interventions can alter

gender identity or sexual orientation." *Id.*  It concluded: "Interventions aimed at a fixed

outcome, such as gender conformity or heterosexual orientation, including those aimed at

changing gender identity, gender expression, and sexual orientation are coercive, can be harmful,

and should not be part of behavioral health treatment." *Id.*

Other medical and mental health organizations that have reached similar conclusions

include: the American Medical Association, American Psychiatric Association, American

Academy of Child and Adolescent Psychiatry, American Academy of Pediatrics, American

College of Physicians, National Association of Social Workers, American Psychoanalytic

Association, American Counseling Association, American School Counselor Association, and

Pan American Health Organization.

Ongoing research has only further strengthened these conclusions.  A recent peer-

reviewed study found that more than 60 percent of young adults who had been subjected to

conversion therapy as minors reported attempting suicide.  *See* Caitlin Ryan et al., *Parent-

Initiated Sexual Orientation Change Efforts with LGBT Adolescents: Implications for Young

Adult Mental Health and Adjustment*, 67 J. Homosexuality 159, at p.10 (2020), *available* at

https://www.utah.gov/pmn/files/513643.pdf.

HB 19-1129 passed by a vote of 21 to 13 in the Senate and 43 to 21 in the House.

Governor Jared Polis approved HB 19-1129 on May 31, 2019, and the law went into effect on

August 2, 2019. HB 19-1129, § 9.

**B.      One Colorado's Instrumental Role in Sponsoring House Bill Number 19-1129.**

As part of its mission to combat discrimination, harassment, and violence based on sexual

orientation and gender identity, One Colorado has lobbied for and supported the enactment of

LGBTQ civil rights laws at the state, county, and municipal levels.  Bridges Decl. at ¶ 2.  One

Colorado was the lead organization supporting passage of HB 19-1129.  *Id.* at ¶ 6.  One

Colorado members also testified before both houses of the Colorado Legislature in support of

HB 19-1129.  *Id.* at ¶ 6.  These efforts were integral to the passage of HB 19-1129 and the

important protections it creates for Colorado youth.

**C.      Plaintiff's Challenge to Senate HB 19-1129.**

Plaintiff Kaley Chiles is a Colorado licensed professional counselor who wishes to

engage in conversion therapy with clients under 18 years of age.  Chiles's Complaint, filed on

September 5, 2022, alleges that HB 19-1129 violates her constitutional rights and those of her

minor clients.  Chiles seeks (1) a preliminary and permanent injunction against the enforcement

of HB 19-1129 by Defendants, who are all officials of the state of Colorado (collectively, the

"State Defendants"); and (2) a declaration that HB 19-1129, both facially and as applied, is

unconstitutional under the United States Constitution. (*See* Verified Compl. at 3–4, ECF No. 1.)

On September 22, 2022, Chiles filed a motion seeking a preliminary injunction enjoining

the State from enforcing HB 19-1129 against her on grounds that doing so is censorship in

violation of the Constitution and the Counseling Censorship Law, pending entry of a final order

in this case.  (*See generally* Mot. Prelim. Inj., ECF No. 29.)

## ARGUMENT

The legal prerequisites for permissive intervention are minimal, and One Colorado easily

satisfies them here.  Rule 24(b) provides that "[o]n timely motion, the court may permit anyone

to intervene who . . . has a claim or defense that shares with the main action a common question

of law or fact" and "[i]n exercising its discretion, the court must consider whether the

intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed.

R. Civ. P. 24(b); *see also City of Stilwell, Okl. v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038,

1042 (10th Cir. 1996).  In exercising that discretion, a court should consider whether the

applicant's participation would "contribute to full development of the underlying factual issues

in the suit and to the just and equitable adjudication of the legal questions presented."  *Spangler*

*v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).  The Tenth Circuit has

repeatedly noted that the Circuit takes a liberal view of Rule 24, leaning in favor of intervention.

*See WildEarth Guardians v. USFS*, 573 F.3d 992, 995 (10th Cir. 2009) (citing *Utah Ass'n of*

*Cntys. v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001)); *Gravina Siding & Windows, Co. v.*

*Gravina's Window Serv.*, No. 1:19-CV-00166-JLK, 2019 WL 12287634, at *2 (D. Colo. Dec.

10, 2019) (citations omitted); *WildEarth Guardians v. IRG Bayaud, LLC*, No. 14-CV-01153-

MSK-KLM, 2016 WL 8465803, at *2 (D. Colo. Nov. 4, 2016) (citations omitted).  Here, as

explained below, One Colorado easily satisfies Rule 24(b)'s threshold requirements, and

discretionary factors favor granting One Colorado's Motion to intervene.

**I.    ONE COLORADO SATISFIES THE THRESHOLD REQUIREMENTS FOR PERMISSIVE INTERVENTION UNDER RULE 24(b)**

One Colorado's Motion to intervene satisfies the three threshold requirements of Rule

24(b).  First, the Motion is timely.  This Motion was filed approximately three weeks after the

8

Complaint and before Defendants have answered or filed a responsive pleading.  Rule 24

"[t]imeliness is to be determined from all the circumstances." *Nat'l Ass'n for Advancement of*

*Colored People v. New York*, 413 U.S. 345, 366 (1973).  "The requirement of timeliness is not a

tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing

the original parties by the failure to apply sooner.  Federal courts should allow intervention

where no one would be hurt and greater justice could be attained."  *Utah Ass'n of Cntys. v.*

*Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quotations omitted).  The Tenth Circuit considers

four factors when assessing the timeliness of a motion to intervene: (1) the amount of time that

elapsed since the proposed intervenor knew of its interest in the matter; (2) prejudice to the

existing parties; (3) prejudice to the proposed intervenor; and (4) the existence of unusual

circumstances.  *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984).

All four factors highlight the timeliness of One Colorado's Motion to intervene.

One Colorado became aware of this lawsuit on or about September 9, 2022.  Because

One Colorado is seeking to intervene approximately three weeks after the Complaint was filed,

permitting One Colorado to intervene would not prejudice any existing party. The Court has

scheduled an in-person case management conference for November 17, 2022.  *See* ECF No. 25.

Pursuant to Fed. R. Civ. P. 24(c), One Colorado will abide by this schedule and file a responsive

pleading to Plaintiff's complaint at the same time as the existing Defendants.  As such, One

Colorado's Motion to intervene is timely and will not cause any delay in the proceedings before

the Court.  *See W. Energy All. v. Zinke*, 877 F.3d 1157, 1164–65 (10th Cir. 2017) (motion to

intervene filed two months after the filing of the complaint was timely); *Utah Ass'n of Cntys.*,

255 F.3d at 1251 (finding motion to intervene filed more than two years after the commencement

9

of the lawsuit was timely because little discovery had occurred during that time); *Sanguine, Ltd.*,

736 F.2d at 1419 (affirming timeliness of motion to intervene filed after entry of judgment). *See*

*also Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, n.10 (9th Cir. 2002) ("[B]ecause the

intervention motions were filed near the case outset and the defendant-intervenors said they

could abide the court's briefing and procedural scheduling orders, there was no issue whatsoever

of undue delay."), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d

1173, 1178 (9th Cir. 2011).

Second, One Colorado's intervention shares common questions of law and fact with the

existing action and would not change or expand the questions of law now before the Court:

whether HB 19-1129 is constitutional and may be enforced.  One Colorado seeks to address the

same questions at issue in Chiles's Complaint, and therefore readily satisfies Rule 24(b)'s legal

commonality requirement.  *See Gravina Siding & Windows, Co.*, 2019 WL 12287634, at *2

(granting intervention to several members of the Gravina family in a trademark infringement

case because "Defendants' Counterclaims and Crossclaims and Intervenors' Third-Party

Complaint share common questions of law and fact").

Third, intervention by One Colorado will neither delay nor prejudice any of the existing

parties.  As an initial matter, there will be no delay because One Colorado is seeking to intervene

at the earliest stages of this matter and will comply with the deadlines set by this Court and under

the Federal Rules of Civil Procedure.  *See Washington Cattlemen's Ass'n v. EPA*, No. C19-0569-

JCC, 2019 WL 3206052, at *2 (W.D. Wa. Jul. 16, 2019) (holding that there was no undue delay

or prejudice even where intervention would require a short extension to allow proposed

intervenors time to respond to plaintiffs' motion for preliminary injunction).  Moreover, as noted

above, One Colorado will not expand the claims before the Court.  *See Kootenai Tribe,* 313 F.3d

at n.10*; Washington v. EPA*, No. 2:19-cv-00884-RAJ, 2020 WL 1955554, at *4 (W.D. Wa. Apr.

23, 2020).  Accordingly, because the rights of the parties will not be prejudiced by One

Colorado's intervention, the third permissive intervention factor is satisfied.

**II.     INTERVENTION BY ONE COLORADO WILL ASSIST THE COURT IN FAIRLY
        AND EFFICIENTLY ADJUDICATING THE PARTIES' CLAIMS**

Because One Colorado has satisfied the threshold requirements for permissive

intervention, Rule 24(b) requires the Court to exercise its discretion to determine whether

intervention is appropriate.  Here, allowing One Colorado to intervene would significantly

"contribute to full development of the underlying factual issues in the suit and to the just and

equitable adjudication of the legal questions presented."  *Spangler v. Pasadena City Bd. of

Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

As explained above, One Colorado has a unique perspective as the largest LGBTQ civil

rights organization in Colorado and the lead organizational proponent of the statute challenged in

this action.  Bridges Decl. at ¶¶ 2, 6.  One Colorado was involved at every stage of the legislative

process that led to the introduction and passage of HB 19-1129.  *Id.* at ¶ 5.  Its members include

persons who may be subjected to the harmful practices prohibited by HB 19-1129, and part of its

mission is to enact laws that protect LGBTQ youth, including those who are members, from

harmful and discriminatory treatment.  *Id.* at ¶ 3, 4.  One Colorado therefore has a unique interest

in the enforcement of the statute that sharply differentiates it from the general public.  *See Pickup

v. Brown*, No. 2:12-CV-02497-KJM-EFB, 2012 WL 6024387, at *1–*2 (E.D. Cal. Dec. 4, 2012)

(finding that California LGBTQ equality group's "sponsorship of [law prohibiting sexual

orientation change efforts for minors] is sufficient to show it has a protectable interest," and

11

ruling that law was unconstitutional "would undercut [the organization's] mission of protecting

LGBT youth from harmful therapies").

Members of One Colorado testified in support of the bill, including individuals who were

subjected to conversion therapy. One Colorado will make valuable contributions to the

development of the record, as its members' experience with sexual orientation change efforts'

harmful effects will allow it to provide a firsthand perspective which the State Defendants lack.

*See Pickup,* 2012 WL 6024387 at *4 (permitting LGBTQ advocacy organization to intervene as

a defendant in suit challenging state prohibition on licensed therapists engaging in sexual

orientation change efforts with minors because organization's information about harms of these

practices would "provide a helpful, alternative viewpoint" to plaintiff therapists' view that they

are effective and safe); *King v. Christie*, 981 F. Supp. 2d 296, 310 (D. N.J. 2013) (same).[1]

Additionally, the fact that One Colorado, like the existing State Defendants, intends to

argue that HB 19-1129 does not violate the federal Constitution does not weigh against

intervention. "To the contrary, the shared interests of [One Colorado] and the state defendants

support [One Colorado's] argument that it shares a common question of law with the current

---

[1] One Colorado's counsel includes the National Center for Lesbian Rights, which has represented state LGBTQ advocacy organizations as defendant-intervenors in challenges to similar legislation in California and New Jersey. These LGBTQ organizations submitted briefs on the merits and testimony from experts demonstrating the risk of severe harms caused by sexual orientation change efforts, and counsel offered oral argument before federal district courts and the United States Courts of Appeals for the Third and Ninth Circuits, both of which rejected constitutional challenges virtually identical to those that Chiles asserts in this Court. *Tingley v. Ferguson*, --- F.4th ---, No. 21-35815, 2022 WL 4076121, at *3 (9th Cir. Sept. 6, 2022); *Pickup v. Brown,* 740 F.3d 1208 (9th Cir. 2014); *King v. Governor of New Jersey*, 767 F.3d 216 (3d Cir. 2014).

action because it plans to defend the constitutionality of" HB 19-1129.  *Pickup,* 2012 WL

6024387 at \*4; *King*, 981 F. Supp. 2d at 309–10.

## <u>CONCLUSION</u>

For all these reasons, One Colorado respectfully requests that the Court grant its Motion

and permit it to intervene as a party defendant pursuant to Federal Rule of Civil Procedure 24(b).

Respectfully submitted this 29th day of September 2022.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

s/Craig M. Finger
Craig M. Finger, #50134
Amalia Sax-Bolder, #54959
410 Seventeenth Street, Suite 2200
Denver, CO   80202-4432
Telephone:      303-223-1100
Fax:              303-223-1111
Email:           cfinger@bhfs.com

*Attorneys for [Proposed] Defendant-
Intervenor One Colorado*

And

Christopher Stoll*
Asaf Orr*
Shannon Minter*
NATIONAL CENTER FOR LESBIAN
RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
Telephone:      (415) 392-6257
E-mail:          cstoll@nclrights.org
                 aorr@nclrights.org
                 sminter@nclrights.org

*Attorneys for [Proposed] Defendant-
Intervenor One Colorado*

* Application for admission forthcoming

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September 2022, I electronically filed a true and correct copy of the foregoing **ONE COLORADO'S MOTION FOR PERMISSION TO INTERVENE AS A DEFENDANT PURSUANT TO RULE 24(b)** with the court using the CM/ECF system which will send notification of such filing to the following counsel:

Shaun Pearman
PEARMAN LAW FIRM, P.C.
4195 Wadsworth Boulevard
Wheat Ridge, CO 80033
Telephone: (303) 991-7600
Fax: (303) 991-7601
Email: shaun@permanlawfirm.com

*Attorneys for Plaintiff*

Barry K. Arrington
ARRINGTON LAW FIRM
4195 Wadsworth Boulevard
Wheat Ridge, CO 80033
Telephone: (303) 205-7870
Email: barry@arringtonpc.com

Robert W. Finke
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
Telephone: (720) 524-7948
Email: Robert.finke@coag.gov

Abby L. Chestnut
Janna K. Fischer
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
Telephone: 720-508-6353 (ALC)
Telephone: 720-508-6374 (JKF)
Email: abby.chestnut@coag.gov
        janna.fischer@coag.gov

*Attorneys for Defendants*

*s/Paulette M. Chesson*
Paulette M. Chesson, Paralegal
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 17th Street, Suite 2200
Denver, CO 80202
*phone*: 303-223-1100; *fax*: 303-223-1111