**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 22-cv-2287-CNS-STV**

**KALEY CHILES**,

Plaintiff,

v.

**PATTY SALAZAR**, in her official capacity as Executive Director of the Department of Regulatory Agencies; et al.

Defendants.

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

## TABLE OF CONTENTS

D.C.COLO.LCIVR 7.1(B)(2) CERTIFICATION ..........................................................................1

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................4

I.  PLAINTIFF'S CLAIMS AGAINST DEFENDANTS SHOULD BE DISMISSED
    FOR LACK OF SUBJECT-MATTER JURISDICTION. ........................................................4

   A.  Plaintiff has failed to establish standing because she has not suffered an injury in
       fact arising from Defendants' conduct. ..................................................................................5

      i.  Plaintiff has not established an injury in fact because she does not allege she has
          engaged or seeks to engage in conduct that would violate the Law. ...............................5

      ii.  Plaintiff has failed to establish pre-enforcement standing. ..............................................7

   B.  Plaintiff has not established third-party standing on behalf of her minor clients. ...............10

II.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
     STATE A CLAIM THAT DEFENDANTS VIOLATED HER CONSTITUTIONAL
     RIGHTS. ................................................................................................................................11

   A.  Plaintiff fails to state a claim that her conduct violates the Law or that the Law
       violates the First Amendment's Free Speech Clause. ........................................................12

      i.  Plaintiff's Complaint fails to show that any of her conduct or intended future
          conduct would violate the Law......................................................................................12

      ii.  Even if the Complaint alleged conduct that would violate the Law, the Law
           regulates professional conduct and complies with the Free Speech Clause...................13

   B.  Plaintiff fails to state a claim on behalf of her minor clients because the Law does
       not infringe on First Amendment rights to receive information or Free Exercise of
       religion. ..............................................................................................................................15

   C.  Plaintiff fails to state a plausible First Amendment Free Exercise claim because the
       Law is neutral and generally applicable...........................................................................16

   D.  Plaintiff fails to state a Due Process claim because the Law is clear..................................19

CONCLUSION..............................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Amoco Prod. Co. v. Aspen Grp.*, 8 F. Supp. 2d 1249 (D. Colo. 1998) ............................................ 4

*Ashaheed v. Currington*, 7 F.4th 1236 (10th Cir. 2021) ................................................ 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 12

*Axson-Flynn v. Johnson*, 356 F.3d 1277 (10th Cir. 2004) ............................................. 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 12

*Bostock v. Clayton Cnty. Ga.*, 140 S. Ct. 1731 (2020) ................................................... 19

*Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661 (2010) ........................................................................................................ 14

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) ................. 16, 17

*Doe ex rel. Doe v. Governor of New Jersey*, 783 F.3d 150 (3d Cir. 2015) ...................... 11

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith,* 494 U.S. 872 (1990) .................... 17

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) .................................................. 17

*Hill v. Colorado*, 530 U.S. 703 (2000) ........................................................................... 19

*Hodgson v. Farmington City*, 675 F. App'x 838 (10th Cir. 2017) .................................. 2

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .............................................. 9

*Hyman v. City of Louisville*, 132 F. Supp. 2d 528 (W.D. Ky. 2001) ............................. 20

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006) ..................... 8

*Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002) ...................................... 1

*Kennedy v. Bremerton School Dist.*, 142 S. Ct. 2407 (2022) ......................................... 17

*King v. Governor of New Jersey*, 767 F.3d 216 (3rd Cir. 2014) ..................................... 10

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ...................................................................... 10

*Lamont v. Postmaster General*, 381 U.S. 301 (1965) .................................................... 15

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra ("NIFLA")*, 138 S. Ct. 2361 (2018) .............. 13, 14

*Obergefell v. Hodges*, 576 U.S. 644 (2015)................................................................. 19

*Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978)........................................... 13, 15

*Peck v. McCann*, 43 F.4th 1116 (10th Cir. 2022) ................................................... 7, 8, 9

*PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182 (10th Cir. 2010)..................................... 15

*Planned Parenthood v. Casey*, 505 U.S. 833 (1992) .................................................. 14

*Powers v. Ohio*, 499 U.S. 400 (1991) ......................................................................... 10

*Reynolds v. Talberg*, Case No. 1:18-cv-69, 2020 WL 6375396 (W.D. Mich. Oct. 30, 2020) ........................................................................................................................... 19

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008)................................................ 11

*Safe Sts. All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017)..................................... 4

*Singleton v. Wulff*, 428 U.S. 106 (1976) ..................................................................... 11

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ......................................................... 14

*Spokeo v. Robins,* 136 S. Ct. 1540 (2016) ..................................................................... 5

*Susan B. Anthony List v. Driehaus ("SBA List")*, 573 U.S. 149 (2014)................................. 7, 8, 9

*Tal v. Hogan,* 453 F.3d 1244 (10th Cir. 2006) .............................................................. 2

*Tandon v. Newsom*, 141 S.Ct. 1294 (2021) ................................................................. 18

*Tandy v. City of Wichita*, 380 F.3d 1277 (10th Cir. 2004) ............................................. 5

*Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022) ............................................... 10, 19

*United States v. O'Brien*, 391 U.S. 367 (1968)............................................................ 14

*United States v. Richter*, 796 F.3d 1173 (10th Cir. 2015) ............................................ 19

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .................................................... 20

*Warth v. Seldin*, 422 U.S. 490 (1975)........................................................................... 10

*Williams-Yulee v. Florida Bar*, 575 U.S. 433 (2015) .................................................. 18

**STATUTES**

18 U.S.C. § 249(c)(4) (2022) ................................................................................ 19

C.R.S. § 12-20-403 (2022) .............................................................................. 17, 20

C.R.S. § 12-240-121 (2022) .................................................................................. 14

C.R.S. § 12-245-202(3.5) (2022) ...................................................................... 1, 20

C.R.S. § 12-245-202(3.5)(a) (2022) ........................................................ 3, 4, 7, 19

C.R.S. § 12-245-202(3.5)(b) (2022) .............................................................. 3, 6, 13

C.R.S. § 12-245-202(3.5)(b)(I) (2022) ............................................................ 2, 3, 6

C.R.S. § 12-245-202(3.5)(b)(II) (2022) ................................................................ 18

C.R.S. § 12-245-217 (2022) ............................................................... 3, 15, 17, 18

C.R.S. § 12-245-224(1) (2022) .............................................................................. 2

C.R.S. § 12-245-224(1)(t)(IV) (2022) .................................................................. 13

C.R.S. § 12-245-224(1)(t)(V) (2022) ........................................................... 1, 2, 17

C.R.S. § 12-245-226 (2022) ................................................................................. 20

C.R.S. § 12-245-226(1)(a)(I) (2022) ................................................................... 17

C.R.S. § 12-245-226(2)(a) (2022) ........................................................................... 2

C.R.S. § 12-245-603 (2022) ................................................................................. 13

C.R.S. § 12-245-803 (2022) ................................................................................. 13

C.R.S. § 24-34-301(3.5) (2022) ........................................................................... 19

C.R.S. § 24-34-301(7) (2022) .............................................................................. 19

C.R.S. § 24-4-101–107 (2022) ......................................................................... 2, 20

**OTHER AUTHORITIES**

Am. Psych. Ass'n, *Task Force on Appropriate Therapeutic Responses to Sexual Orientation* (2009) .................................................................................................. 1

*Prohibit Conversion Therapy for a Minor: Hearing on HB 19-1129 Before the H. Comm.
On Pub. Health Care & Human Servs*. 70th Sess. (2019)....................................................... 2

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendants, through the Colorado Attorney General, move to dismiss Plaintiff's claims against Defendants.

## D.C.COLO.LCivR 7.1(b)(2) CERTIFICATION

In accordance with D.C.COLO.LCivR 7.1(b)(2) and Civ. Practice Standard 7.1B., undersigned counsel conferred with Plaintiffs before filing this Motion. Plaintiff opposes the relief requested. Proposed intervenor One Colorado does not oppose.

## INTRODUCTION

Three years ago, Colorado passed HB 19-1129, which prohibits the practice of conversion therapy on minors by licensed mental health professionals (the "Law"). Colo. Rev. Stat. §§ 12-245-202(3.5), 12-245-224(1)(t)(V). In enacting the Law, Colorado exercised its well-established regulatory authority over licensed professionals to promote the health, safety, and welfare of Colorado's minors who engage with licensed or registered mental health professionals. Considering the growing body of research outlining the harms of conversion therapy on minors, the state prohibits mental health professionals from engaging in this harmful therapeutic practice when working with anyone under the age of eighteen. Documented harms of conversion therapy efforts include "loss of sexual feeling, depression, suicidality, and anxiety." Am. Psych. Ass'n, *Task Force on Appropriate Therapeutic Responses to Sexual Orientation*, 3 (2009).[1] Testimony from professionals in support of HB 19-1129 explained that "[the] effects created by conversion therapy can and do lead to an increased suicidality and a reluctance for young people to seek

---

[1] Plaintiff's Complaint references the APA Task Force Report, at least partially, to support her claim that the Law was aimed at religious practice. Defendants properly reference this report in support of this Motion to show the documented problems associated with conversion therapy that the Law addresses. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

support when they're feeling suicidal." *Prohibit Conversion Therapy for a Minor: Hearing on HB 19-1129 Before the H. Comm. On Pub. Health Care & Human Servs*. 70th Sess. (2019) (statement of Dr. Robert Werthwein, Dir. for Off. of Behav. Health, Dep't of Hum. Servs).[2] Colorado has compelling public health and safety interests in protecting minors from what are well-known, dangerous, and clinically unnecessary harms inflicted by the practice of conversion therapy.

The Law only allows state regulators, like Defendants, to discipline a licensee or registrant who violates C.R.S. § 12-245-224(1) after complying with the notice and hearing requirements set forth by the State Administrative Procedure Act ("APA"). C.R.S. §§ 12-245-226(2)(a); 24-4-101—107. Neither Board has sought any discipline of any licensees for violations of C.R.S. § 12-245-224(1)(t)(V). Declaration of Reina Sbarbaro-Gordon ¶ 4. Plaintiff does not allege that she is subject to any enforcement action by Defendants. By her Complaint, Plaintiff alleges a desire to engage in an array of activities, none of which would violate the Law.

For example, Plaintiff wishes to provide "counseling related to sexuality and gender" that can "fully explore certain clients' bodily experiences around sexuality and gender and how their sensations, thoughts, beliefs, interpretations, and behaviors intersect." Compl. ¶¶ 113, 115, 116. The Law states that "acceptance, support, and understanding for the facilitation of an individual's coping, social support, and identity exploration and development" does not constitute conversion therapy. C.R.S. § 12-245-202(3.5)(b)(I). Plaintiff wants to provide "information pertaining to unwanted same-sex sexual attractions, behaviors, or identity." Compl. ¶ 134. The Law does not

---

[2] A court may consider matters of which a court may take judicial notice in deciding a motion to dismiss without converting it into a motion for summary judgment. *Tal v. Hogan,* 453 F.3d 1244, 1264, n.24 (10th Cir. 2006). Because the statements made during the passage of HB 19-1129 are matters of public record, this Court may consider the legislative history in this Motion. *See Hodgson v. Farmington City*, 675 F. App'x 838 (10th Cir. 2017).

prohibit Plaintiff from expressing her views or providing information from research studies, press releases, or anything else to her minor clients. Plaintiff desires to discuss religious views with her clients, including on topics of human sexuality. Compl. ¶¶ 110, 150. As expressing her views or discussing a biblical worldview is not a therapeutic "practice or treatment," the Law does not prohibit this. Plaintiff wants to refer minor clients to someone who offers conversion therapy. Compl. ¶¶ 135, 141. A referral to a religious minister who may conduct conversion therapy would not constitute a "practice or treatment" under the Law. C.R.S. §§ 12-245-202(3.5)(a), 12-245-217.

Plaintiff wonders whether discussing "confusion, anxiety, conflict, or stress a client feels about their unwanted same-sex attractions, behaviors, or identity" (Compl. ¶ 96) runs afoul of the Law, without identifying any "practice or treatment" she would employ that would "change an individual's sexual orientation or gender identity." Compl. ¶ 177. Discussion of a client's attractions, behaviors, and identity falls squarely within the permissible conduct outlined in C.R.S. § 12-245-202(3.5)(b)(I). Plaintiff wants to counsel clients on the subject of same-sex attractions, behaviors, or identity from a religious viewpoint that aligns with her religious beliefs and those of her clients. Compl. ¶ 150. Plaintiff may counsel clients in a way consistent with her and her clients' religious views, as long as such counseling does not attempt or purport to change sexual orientation or gender identity. The Law expressly allows such "facilitation of an individual's coping, social support, and identity exploration and development." C.R.S. § 12-245-202(3.5)(b).

Plaintiff states that she "does not seek to 'cure' clients" or change their sexual orientation," but "only to assist [them] with their stated desires and objectives." Compl. ¶ 87. Nor does she "imply that categorical change in attractions is a therapeutic goal," or "create unrealistic expectations for clients." *Id*. ¶ 82. This conduct complies with the Law's limitations. C.R.S. § 12-

3

245-202(3.5)(a) . By her own assertions, Plaintiff does not engage in such prohibited conduct nor allege that she intends to. Plaintiff has not been and will not be injured by the Law. Her Complaint should be dismissed for lack of subject-matter jurisdiction and for failure to state a claim.

## ARGUMENT

The Court lacks subject-matter jurisdiction over Plaintiff's claims, and they should be dismissed under Fed. R. Civ. P. 12(b)(1). Plaintiff does not have standing to assert claims, either on her own behalf or that of her minor clients. Moreover, even if the Court had subject-matter jurisdiction over Plaintiff's claims, they should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. As permitted by Fed. R. Civ. P. 10(c), Defendants adopt the arguments set forth more fully in their Response in Opposition to the Plaintiff's Motion for Preliminary Injunction.

**I.    PLAINTIFF'S CLAIMS AGAINST DEFENDANTS SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.**

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a complaint where the court lacks subject-matter jurisdiction. The determination of a court's subject-matter jurisdiction is a threshold question of law for which the party invoking the court's jurisdiction bears the burden of proof. *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017). If the opposing party challenges the jurisdiction of the court as a matter of law, the court must accept the factual allegations as true and determine whether those facts state a claim over which the court has jurisdiction. *Amoco Prod. Co. v. Aspen Grp.*, 8 F. Supp. 2d 1249, 1251 (D. Colo. 1998). Plaintiff has not established that she has standing because she has not alleged any actual injury. Accordingly, her claims should be dismissed for lack of subject-matter jurisdiction.

A. **Plaintiff has failed to establish standing because she has not suffered an injury in fact arising from Defendants' conduct.**

    i. **Plaintiff has not established an injury in fact because she does not allege she has engaged or seeks to engage in conduct that would violate the Law.**

To establish standing to bring an action, a plaintiff must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins,* 136 S. Ct. 1540, 1547 (2016). A plaintiff has the burden to show that they have suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Id.* at 1548. For an injury to be concrete, "it must actually exist." *Id.* "A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283-84 (10th Cir. 2004). Because Plaintiff's alleged conduct is not proscribed, she has not demonstrated an injury in fact that is concrete, particularized, and actual or imminent.[3] Plaintiff has failed to establish standing, and this action therefore should be dismissed for lack of subject-matter jurisdiction.

First, Plaintiff states that she "does not seek to 'cure' clients of same-sex attractions or to 'change' clients' sexual orientation." Compl. ¶ 87. Plaintiff denies using aversive techniques and states that she "does not imply that categorical change in attractions is a therapeutic goal." *Id.* ¶ 82. "Plaintiff does not begin counseling with any predetermined goals" (*Id.* ¶ 85) and provides

---

[3] While Plaintiff does identify prohibited conduct – such as "seeking to eliminate or reduce unwanted same-sex attractions, behaviors, or identity" (Compl. ¶ 5) or providing "assistance in seeking to eliminate unwanted same-sex attractions, behaviors, or identity" (Compl. ¶ 95) – she does not specifically allege that she has engaged in or intends to engage in that conduct. Plaintiff does not, by these passing phrases, sufficiently allege a concrete, actual, and particularized injury.

supportive therapy with clients who are content with their sexual identity. *Id.* ¶ 86. Accepting these allegations as true, Plaintiff's practice is in accord with the Law.

Second, the conduct Plaintiff alleges would violate the Law constitutes normal and permissible therapeutic identity exploration and development. *See, e.g., Id.* ¶¶ 82, 85, 96, 113, 115, 134, 135, 141, 150. For example, Plaintiff mischaracterizes the Law as preventing "counseling to address conflict about, or questions concerning, [a client's] unwanted same-sex attractions, behaviors, and identities." *Id.* ¶ 4. But the Law does not prevent such interventions. Plaintiff can provide acceptance and support that helps clients "understand the sources, causes, and origins of their feelings," (*Id.* ¶ 96) including distress arising from conflicts and concerns over their gender identity, "unwanted" same-sex attractions, and behaviors. *Id.* ¶¶ 83, 96. Under a plain reading of C.R.S. § 12-245-202(3.5)(b), the plaintiff's interventions here conform to both the Law and the standards of care relevant to licensed professional counselors and licensed addiction counselors.

The Law also does not compel Plaintiff to provide therapy under an "acceptance-only" mandate. Compl. ¶ 115. It does require the therapeutic practice or treatment be neutral. The Law permits all minor clients to receive supportive counseling that reduces distress related to sexual attractions, gender identities, and any related conflicts. The Law permits "sexual-orientation-neutral interventions" to address unlawful or unsafe sexual practices. C.R.S. § 12-245-202(3.5)(b)(I). The Law does not interfere with support for a minor client who seeks to reduce or eliminate sexual behaviors, provided the therapeutic practice or intervention is neutral as to sexual orientation. For example, minor clients who wish to abstain from all sexual activity—whether for family planning, health, or religious reasons—can be supported by therapeutic intervention that addresses unwanted sexual attraction and behaviors.

The Law also does not prevent Plaintiff from expressing her opinion on conversion therapy, research related to transgender issues, her beliefs about sexual orientation, gender identity, sexual behavior, or any other topic—whether controversial or commonplace—either in therapy or in the public square. The Law prohibits only one type of harmful therapeutic practice, that which promotes a particular sexual orientation or gender as a preferred outcome. Far from endorsing any governmental ideological beliefs, the Law prohibits preferred-outcome interventions regardless of, and without reference to, a client's sexual orientation or gender identity.

The practices described within Plaintiff's Complaint fall outside of the definition of conversion therapy in C.R.S. § 12-245-202(3.5)(a). Because neither her current, nor proposed, conduct violates the Law, Plaintiff has not suffered an injury in fact sufficient to establish standing.

### ii.    Plaintiff has failed to establish pre-enforcement standing.

Plaintiff fails to establish pre-enforcement standing because she does not allege either an intention to engage in conduct affected with a constitutional interest or that a credible threat of prosecution exists. To show pre-enforcement standing, a plaintiff must allege a "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" injury. *Susan B. Anthony List v. Driehaus ("SBA List")*, 573 U.S. 149, 158 (2014) (citation omitted). A plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022) (citation omitted).

To allege an intention to engage in a course of conduct arguably affected with a First Amendment interest, a plaintiff can point to "(1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a

present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that

they presently have no intention to do so *because of* a credible threat that the statute will be

enforced." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006). Here,

Plaintiff has not sufficiently alleged such an intention.

A plaintiff satisfies the injury-in-fact requirement when they state with certainty that they

wish to engage in the proscribed speech and definitively plan to do so upon a lifting of the

government restrictions. *Peck,* 43 F.4th at 1130. For instance, the plaintiff in *Peck* had already

violated the law at issue, which prevented the disclosure of non-identifying information about

children who were victims of violence, and she expressed an intent to do it again in a sworn

declaration. *Id*. Similarly, in *SBA List*, the Supreme Court found that the plaintiffs demonstrated

an intention to engage in a course of conduct because they "pleaded specific statements they intend

to make" that would violate the law. *SBA List*, 573 U.S. at 161. In contrast, Plaintiff here denies a

present desire to engage in conversion therapy, stating she "does not seek to 'cure' clients of same-

sex attractions or to 'change' clients' sexual orientation." Compl. ¶ 87. Plaintiff instead contends

that she seeks to engage in therapeutic conduct that does *not* violate the Law. Nor has Plaintiff

alleged that she engaged in conversion therapy in the past. Plaintiff alleges only a recent "interest

in specializations such as . . . gender dysphoria and sexuality." *Id*. ¶¶ 83, 113, 120. Plaintiff

expresses only vague desires to "fully explore" the topic of sexuality and gender with minors in

ways that, as argued above, do not violate the Law. *Id*. These allegations are not enough to show

an intention to engage in conduct proscribed by the Law.

Second, for a pre-enforcement challenge to a law such as this one, a plaintiff may establish

an injury when they are subject to a threat of enforcement, but that threatened enforcement must

be sufficiently imminent. *SBA List*, 573 U.S. at 159. A plaintiff may establish a credible fear of enforcement by showing "(1) . . . 'past enforcement against the same conduct'; (2) whether authority to initiate charges was 'not limited to a prosecutor or an agency' . . . ; and (3) whether the state disavowed future enforcement." *Peck*, 43 F.4th at 1132 (citation omitted); *SBA List,* 573 U.S. at 159.  Plaintiff's Complaint fails to show fear of enforcement under these factors.

To start, the Law has not been enforced against any licensees or registrants since it was passed over three years ago. Decl. of Reina Sbarbo-Gordon ¶ 4. Plaintiff cannot show past enforcement of the same conduct. *See SBA List*, 573 U.S. at 164; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010) (finding sufficient credible threat of enforcement where the government had already charged 150 people with violating the law, including the provisions of the law at issue). Nor can Plaintiff point to an administrative agency's finding of probable cause that her speech violated the law to show an imminent threat of prosecution.[4] *SBA List*, 573 U.S. at 159. Plaintiff alleges no outstanding administrative action against her from either Defendant Board relating to the Law. Finally, the Law does not create a private right of action. *Id*. at 164. (credibility of the threat of prosecution was bolstered by the fact that "any person" could file a complaint, as opposed to a prosecutor or an agency). Only the Defendant Boards may pursue discipline against a licensed or registered mental health practitioner for violating the Law. Because Plaintiff makes no allegations that support a credible threat of prosecution, she cannot establish an injury in fact.

Without an injury in fact or pre-enforcement standing, Plaintiff's claims must be dismissed.

---

[4] While a credible threat of administrative proceedings may be possible harm sufficient to justify pre-enforcement review, the Supreme Court left open the question of whether administrative prosecution *alone* was sufficient to demonstrate such standing. *SBA List*, 573 U.S. at 159.

**B.    Plaintiff has not established third-party standing on behalf of her minor clients.**

A plaintiff "generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citations omitted). However, "there may be circumstances where it is necessary to grant a third party standing to assert the rights of another." *Kowalski v. Tesmer*, 543 U.S. 125, 129-130 (2004). To establish third-party standing on behalf of her minor clients, Plaintiff must have (1) suffered an injury in fact that gives the plaintiff a sufficiently concrete interest in the outcome of the issue in dispute; (2) [have] a close relation to the third party; and (3) there [must be] some hindrance to the third party's ability to protect his or her own interests. *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991) (citations omitted). Here, Plaintiff has not established that she holds a close relationship to any specific third-party minors who wish to undergo conversion therapy, so she lacks standing. She also has alleged no hindrance to a potential third-party minor's ability to protect their own interests.

In *Kowalski*, the Supreme Court found that third-party standing cannot be established for potential clients that plaintiffs may have in the future. *Kowalski*, 543 U.S. at 131 (concerning a potential future attorney-client relationship). There must be an *existing* close relationship to establish third-party standing. *Id.*; *see also Tingley v. Ferguson*, 47 F.4th 1055, 1069-70 (9th Cir. 2022) (finding a plaintiff-therapist could not establish third-party standing, because "[w]ithout more detail about his current clients, their desired information, or how the law has specifically deprived them of access to this information, an opinion adjudicating the alleged rights of these third parties would be plainly advisory"); *see also King v. Governor of New Jersey*, 767 F.3d 216, 244 (3rd Cir. 2014). Here, Plaintiff has provided no details about her current minor clients or how

they might be impacted by the Law. All language concerning Plaintiff's minor clients is speculative and alludes to therapist-client relationships that may exist or could exist in the future. Compl. ¶¶ 120, 123-24. Nor has Plaintiff supplied information about whether her alleged existing minor clients have requested conversion therapy, or how the Law might deprive specific minor clients of access to information or limit their free exercise of religion. Compl. ¶¶ 123-24.

Plaintiff has also not asserted or provided evidence of any hindrance that would prevent any minor clients from raising their own claims. Although third parties may be "chilled from" asserting claims themselves "by a desire to protect [their privacy] from the publicity of a court suit," to maintain privacy, a "[s]uit may be brought under a pseudonym, as so frequently has been done." *Singleton v. Wulff*, 428 U.S. 106, 117 (1976). If a minor client wished to assert their own claims, they could do so by pseudonymous filing. *See, e.g., Doe ex rel. Doe v. Governor of New Jersey*, 783 F.3d 150, 154 (3d Cir. 2015) (minor client and parents brought anonymous claim challenging New Jersey's conversion therapy statute, which the court upheld). There is no demonstrated hindrance upon any alleged minor client to raise their own claims.

Without a demonstrably close relationship, nor a shown hindrance to a third-party minor, Plaintiff fails to establish third-party standing, and her second claim for relief should be dismissed.

## II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM THAT DEFENDANTS VIOLATED HER CONSTITUTIONAL RIGHTS.

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted. "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted); *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

### A.    Plaintiff fails to state a claim that her conduct violates the Law or that the Law violates the First Amendment's Free Speech Clause.

Plaintiff has not shown that her First Amendment rights are violated by the Law for two reasons. First, as argued above, Plaintiff does not purport to engage or intend to engage in conduct that would violate the Law. Second, even if Plaintiff's Complaint showed that she intended to provide conversion therapy to minors, such treatment is professional conduct, and prohibiting such treatment on minors conforms to the requirements of the First Amendment's Free Speech Clause.

### i.    Plaintiff's Complaint fails to show that any of her conduct or intended future conduct would violate the Law.

The conduct Plaintiff alleges does not violate the Law. Plaintiff denies any intent to use interventions with a fixed outcome to change a minor's sexual orientation or gender identity. Plaintiff states that she "does not seek to 'cure' clients of same-sex attractions or to 'change' clients' sexual orientation." Compl. ¶ 87. Plaintiff "does not imply that categorical change in attractions is a therapeutic goal" she wishes to use. *Id.* ¶ 82. "Plaintiff does not begin counseling with any predetermined goals," and does not allege that any of her minor clients have requested therapy with a predetermined goal to change their sexual orientation or gender identity. *Id.* ¶ 85.

Nor does the Plaintiff allege use of any interventions that are not neutral as to sexual orientation. Plaintiff provides supportive therapy for clients who "are content with a sexual

identity." *Id.* ¶ 86. Plaintiff continues to discuss freely the topics of "sexual attractions, behaviors, and identity" with clients, and is not prevented by the Law from discussing "gender roles, identity, sexual attractions, root causes of desires, behavior and values." *Id.* ¶ 83. Plaintiff does not allege an intent to use interventions that are not "sexual-orientation-neutral" to address clients who might seek "to reduce or eliminate unwanted sexual attractions, change sexual behaviors, or grow in the experience of harmony with one's physical body." *Id.* ¶ 87; C.R.S. § 12-245-202(3.5)(b). Taking her allegations as true, Plaintiff's practice complies with Colorado's Law, and she has failed to state a claim upon which relief can be granted.

      **ii.**    **Even if the Complaint alleged conduct that would violate the Law, the Law regulates professional conduct and complies with the Free Speech Clause.**

"States may regulate professional conduct, even though that conduct incidentally involves speech." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra ("NIFLA")*, 138 S. Ct. 2361, 2372 (2018). Professional conduct that involves speech is "afforded less protection" under the Free Speech Clause. *Id.* at 2365. Professional conduct regulations may regulate conduct "entitled to some constitutional protection . . . subject to regulation in furtherance of important state interests." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 459 (1978). A reasonable rule of professional conduct—even one that incidentally involves speech—supported by a legitimate and important state interest to prevent harm, is sufficient to withstand First Amendment scrutiny. *Id.* at 464.

Plaintiff engages in an array of licensed activities as a professional counselor that involve speech but are subject to professional conduct regulations. C.R.S. §§ 12-245-603, 12-245-803. State law prohibits therapeutic treatment that is both ineffective and harmful to minors, including conversion therapy and "rebirthing as a therapeutic treatment." C.R.S. § 12-245-224(1)(t)(IV). Because the Law targets a course of professional conduct and is "unrelated to the suppression of

free expression," any impact on speech used to carry out the therapeutic treatment—regardless of how much or how little speech that may be—is only incidental and indirect. *United States v. O'Brien*, 391 U.S. 367, 377 (1968). Laws governing professional conduct are not analyzed under traditional content- and speaker-based scrutiny because, by definition, such laws may address only people engaged in and topics related to the practice of a particular profession. *See NIFLA*, 138 S. Ct. at 2373 ("Indeed, the requirement that a doctor obtain informed consent to perform an operation is 'firmly entrenched in American tort law.'") (citation omitted); *Planned Parenthood v. Casey*, 505 U.S. 833, 884 (1992) ("To be sure, the physician's First Amendment rights not to speak are implicated, but only as part of the practice of medicine, subject to reasonable licensing and regulation by the State."). Informed consent laws, for example, are constitutionally permissible regulations of professional conduct, even though they require the communication of certain information to clients and therefore affect the content of licensed professionals' speech.

Nor does the Law regulate anything other than therapeutic treatment. It covers only Colorado licensed and registered mental health practitioners and psychiatrists who practice psychotherapy. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011); C.R.S. § 12-240-121. It prevents conversion therapy from being practiced on heterosexual and LGBTQ minor clients alike, so it does not single out "disfavored speech by disfavored speakers." *Sorrell*, 564 U.S. at 564. The Law is not motivated by ideology or the perspective of the mental health practitioner, but rather applies to all regulated Colorado therapy providers. *See e.g., Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 694 (2010).

As a regulation of professional conduct, even one that incidentally includes speech, the Law satisfies the minimal level of scrutiny required. The Law is a reasonable rule of professional

14

conduct supported by a legitimate and important state interest. *See Ohralik*, 436 U.S. at 459. And here Colorado's narrow prohibition is supported by an important, and even compelling, state interest: the prevention of harmful therapy known to increase suicidality in minors. Moreover, although it need not be, the Law is narrowly tailored to address only the harms inflicted by interventions that try to change minors' sexual orientation or gender identity. The Law is limited to *professional* conduct and specifically exempts "[a] person engaged in the practice of religious ministry," which respects expectations under the Free Exercise Clause. C.R.S. § 12-245-217. And the Law applies only to the population most vulnerable to conversion therapy's harms: minors. *See PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1198 (10th Cir. 2010). Plaintiff is not constrained from treating an adult client who wishes to undergo conversion therapy.

Because the Law regulates professional conduct and advances a compelling interest in a manner that would survive any level of scrutiny, it easily satisfies the test applied to professional conduct regulations, and Plaintiff has failed to allege a violation of her right to Free Speech.

> **B.    Plaintiff fails to state a claim on behalf of her minor clients because the Law does not infringe on First Amendment rights to receive information or Free Exercise of religion.**

Plaintiff asserts that the Law has infringed upon her minor clients' First Amendment rights to receive information and to exercise their religious beliefs. Compl. ¶¶ 122-23. But Plaintiff has failed to sufficiently allege violations of her minor clients' rights because neither her minor clients' First Amendment right to receive information nor First Amendment right to Free Exercise of religion has been violated by the passage of the Law. The First Amendment protects the right to receive information. *See Lamont v. Postmaster General*, 381 U.S. 301, 305-07 (1965). However, Colorado has not restricted the knowledge or information available to anyone. The Law prohibits

licensed mental health practitioners from providing to minors a form of therapeutic intervention that has been found scientifically ineffective and dangerous. It does not prevent the exchange of information and ideas about the subject.

For example, the Law does not prevent Plaintiff from speaking on press releases and research studies, her perception of the value of conversion therapy; her beliefs about sexual orientation, gender identity, sexual behavior; or any other topic with a minor client. Plaintiff's minor clients can obtain the information they seek concerning conversion therapy and can be referred by Plaintiff to a religious minister who provides conversion therapy. Plaintiff also asserts her clients' rights to Free Exercise of religion has been violated by the Law. Compl. ¶ 124. Plaintiff has failed to specifically identify any current or former minor clients who have sought conversion therapy, what kind of religious beliefs any potential minor clients may hold, or how the Law would infringe on those beliefs. Minor clients can freely engage with their faith and seek guidance or treatment, including conversion therapy, from religious ministers.

Plaintiff has not shown an infringement upon her minor clients' First Amendment rights to receive information or to their Free Exercise of religion, and her claim should be dismissed.

### C. Plaintiff fails to state a plausible First Amendment Free Exercise claim because the Law is neutral and generally applicable.

Under the First Amendment's Free Exercise Clause, Plaintiff also fails to state a plausible claim to relief on its face because the Law is neutral and generally applicable. "A law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). The Law survives rational basis review. *Ashaheed v. Currington*, 7 F.4th 1236, 1243 (10th Cir. 2021).

16

First, the Law is neutral. "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021). The Law applies to all licensed and registered mental health practitioners in Colorado regardless of their religious or secular affiliations. It does not target a religious practice; rather, it regulates a therapeutic modality, and exempts religious ministers from this regulation. C.R.S. §§ 12-245-217; 12-245-224(1)(t)(V). Plaintiff has provided no support for her claims that the Law was enacted because of intolerance of religious beliefs or to restrict religious practice. *Kennedy v. Bremerton School Dist.*, 142 S. Ct. 2407, 2421-22 (2022). Plaintiff refers to research and publications that, rather than show that the Law is a veiled abridgment of religious freedom, state that conversion therapy is primarily—but not exclusively— sought for religious reasons. Compl. ¶¶ 39-41. But "adverse impact will not always lead to a finding of impermissible targeting." *Lukumi*, 508 U.S. at 535.

Second, the Law is generally applicable because it does not contain a mechanism for individualized exemptions and prohibits conversion therapy whether or not the licensed or registered practitioner would employ such therapy for secular or religious reasons. To show that a law is not generally applicable, a plaintiff must point to "a mechanism for individualized exemptions." *Fulton*, 141 S. Ct. at 1877 (quotation and citation omitted). But the Law does not contain a "system of individual exemptions," either for secular or religious purposes. *See Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 884 (1990). The Law incorporates due process requirements from the APA and requires a showing of reasonable grounds before investigating a complaint. C.R.S. §§ 12-20-403, 12-245-226(1)(a)(I). Such a typical enforcement mechanism does not create "individual exemptions." Furthermore, to prevent any "religious

gerrymander" that might harm religious exercise the Law *exempts* religious ministerial counseling from its reach, preventing religious hardship, and treating religious exercise *more* favorably than secular practice. *See Tandon v. Newsom*, 141 S.Ct. 1294, 1296 (2021).[5]

The Law does not establish a system of individualized exemptions by permitting counseling when such a minor client is undergoing gender transition. Compl. ¶¶ 99-103. The Law provides that "[a]ssistance to a person undergoing gender transition" does not constitute "conversion therapy." C.R.S. § 12-245-202(3.5)(b)(II). This is not an individualized exemption, but an objective, categorical distinction that serves the purposes of the statute. *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1298 (10th Cir. 2004). Allowing for the therapeutic care of a minor client who is *already undergoing* gender transition is treatment that supports a minor client's existing gender identity in a manner that is neutral about sexual orientation and gender identity. Such therapy does not attempt or purport to change gender identity. And the Law's categorical distinction applies to all minor clients regardless of whether they are already transitioning to a gender that conforms or conflicts with their assigned identity at birth.

Because the Law is neutral and generally applicable, Plaintiff has failed to allege a violation of her First Amendment Free Exercise rights and her claim should be dismissed.

---

[5] That the Law is narrowly tailored does not make it underinclusive. Colorado "need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 449 (2015). The Law addresses Colorado's central concern: prohibiting mental health providers licensed or registered with the state from engaging in a dangerous therapeutic modality with minors. Religious ministers are generally excluded from Colorado's laws relating to mental health professional conduct standards, which strike a balance between Colorado's interests in preventing harm and respecting constitutional protections for religious exercise. *See* C.R.S. § 12-245-217. The Law is no different.

**D.      Plaintiff fails to state a Due Process claim because the Law is clear.**

The Law prohibits licensed and registered mental health professionals—who have specialized knowledge in the concepts at issue—from engaging in conversion therapy, which is defined by the Law.  C.R.S. § 12-245-202(3.5)(a). To show that a statute is unconstitutionally vague, a Plaintiff must show that it either fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or that it authorizes or even encourages arbitrary and discriminatory enforcement. *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *see also United States v. Richter*, 796 F.3d 1173, 1188 (10th Cir. 2015). And "if the statutory prohibition involves conduct of a select group of persons having specialized knowledge . . . the standard is lowered and a court may uphold a statute which uses words or phrases having a technical or other special meaning, well enough known to enable those within its reach to correctly apply them." *Richter,* 796 F.3d at 1189 (internal quotation and citation omitted). Because Plaintiff cannot show that a licensed or registered mental health professional would not understand what conduct is prohibited, she has failed show that the Law is unconstitutionally vague.

Plaintiff argues that "sexual orientation" and "gender identity" are vague terms. This claim is belied by the scientific evidence, state definitions, federal definitions, federal case law, and Plaintiff's own statements. Both terms are defined in Colorado law and are similarly defined and regularly used in federal law and by federal courts without issue. C.R.S. § 24-34-301(3.5), (7); *see, e.g.,* 18 U.S.C. § 249(c)(4); *Obergefell v. Hodges*, 576 U.S. 644, 661 (2015); *Bostock v. Clayton Cnty. Ga.*, 140 S. Ct. 1731, 1739 (2020). Courts have routinely rejected arguments that these terms are unconstitutionally vague. *See, e.g., Tingley*, 47 F.4th at 1089-90; *Reynolds v. Talberg*, Case No. 1:18-cv-69, 2020 WL 6375396, at *8 (W.D. Mich. Oct. 30, 2020); *Hyman v. City of Louisville*,

132 F. Supp. 2d 528, 546 (W.D. Ky. 2001). Plaintiff herself uses these terms throughout her Complaint in ways that suggest she understands their meanings. *See, e.g.,* Compl. ¶¶ 4, 6, 52, 56, 81, 87. A reasonable licensed mental health professional in Colorado would understand what conduct is prohibited by the Law.

The Law also does not invite arbitrary and discriminatory enforcement. A statute need not have "perfect clarity and precise guidance." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). The Law's prohibition on "attempt[s]" to provide "practice or treatment" constituting conversion therapy to minors is clear. C.R.S. § 12-245-202(3.5). Plaintiff provides no support for her assertions that Defendants will bring enforcement actions "based on their personal predilections, or for discriminatory purposes." Compl. ¶¶ 175-178. Defendants do not have "unfettered enforcement authority"; rather they must always comply with due process and the course of action prescribed by the APA when seeking to discipline any licensee, including through investigations of complaints, notice to a licensee, a hearing, and the opportunity for judicial review of any Board decisions. C.R.S. §§ 12-20-403, 12-245-226, 24-4-101—107.

Plaintiff's claim that the Law violates her Due Process rights should be dismissed.

## CONCLUSION

Plaintiff has failed to establish that this Court has subject-matter jurisdiction over her claims and to state any plausible claim for relief against Defendants. Under Fed. R. Civ. P. 12(b)(1) and (6), Defendants ask the Court to dismiss all claims presented in Plaintiff's Complaint.

Respectfully submitted this 6th day of December, 2022.

PHILIP J. WEISER
Attorney General

*/s/ Abby Chestnut*
_____

***Robert W. Finke***, #40756*
First Assistant Attorney General
Telephone: 720-508-6376
Email: robert.finke@coag.gov

***Janna K. Fischer***, #44952*
Assistant Attorney General
Telephone: 720-508-6374
Email: janna.fischer@coag.gov

***Abby Chestnut***, #51189*
Assistant Attorney General
Telephone: 720-508-6353
Email: abby.chestnut@coag.gov

***Brianna S. Tancher***, #55177*
Assistant Attorney General
Telephone: 720-508-6404
Email: brianna.tancher@coag.gov

***Melody Joy Fields***, #55866
Assistant Attorney General Fellow
Telephone: 720-508-6000
Email: melody.fields@coag.gov

Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Denver, CO 80203
*Counsel of Record for Defendants*